Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 4/19/2024

# IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| John Steve Huffman, | ) | Case No. 3:23-bk-03264 |
| | ) | Chapter 7 |
| Debtor. | ) | Judge Randal S Mashburn |

_____

| | | |
|---|---|---|
| Teena Colebrook, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. Proc. No. 3:24-ap-90018 |
| | ) | |
| John Steve Huffman, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION
## IN SUPPORT OF ORDER RULING ON PLAINTIFF'S APPLICATION
## FOR *IN FORMA PAUPERIS* STATUS AND DISMISSING COMPLAINT

Plaintiff Teena Colebrook has requested the Court grant her *in forma pauperis* status and thus waive the prepayment of the adversary proceeding filing fee. (Docs. 2, 3, 6 & 9.) For the reasons explained in more detail below, the Court will grant Ms. Colebrook's application for *in forma pauperis* status. However, after pre-screening Ms. Colebrook's complaint as required by applicable law under these circumstances, the Court must summarily dismiss it for failure to state a claim.

Ms. Colebrook essentially alleges that debtor John Steve Huffman and named and unnamed "co-conspirators" are guilty of fraud for promising, but failing, to pay contractual debt dating back to 2012, or potentially inducing Ms. Colebrook to invest

with a false guarantee of repayment. Ms. Colebrook also asks that the related debt owed to her by Mr. Huffman be declared nondischargeable. As a threshold matter, Ms. Colebrook's underlying claims of fraud are time-barred based on the allegations included in the complaint. Since Ms. Colebrook cannot enforce the underlying debt, there is nothing for the Court to declare nondischargeable under 11 U.S.C. § 523(a). To the extent Plaintiff's fraud claims are not time-barred, she fails to allege all the necessary elements of a nondischargeability claim under cited section of 11 U.S.C. § 523(a).

## I.    Waiver of Prepayment of Filing Fee

The Court will first address the *in forma pauperis* application. Persons commencing adversary proceedings are required to pay a filing fee of $350 at the outset of the case. Although Congress in 28 U.S.C. § 1930(f)(2) expressly permitted the waiver of bankruptcy-related filing fees for debtors, there is no express provision for waiving adversary proceeding filing fees for creditor plaintiffs. Instead, § 1930(f)(3) provides that "[t]his subsection *does not restrict* the district court or the bankruptcy court from waiving, in accordance with Judicial Conference policy, fees prescribed under this section for other debtors and creditors." *Id.* (emphasis added). The Judicial Conference has not issued a policy about the waiver of adversary proceeding filing fees for creditors. *See* Bankruptcy Fee Compendium III (June 1, 2014 Edition).[1] As there is no applicable Judicial Conference policy, the Court may

---

[1] Available at: https://jnet.ao.dcn/court-services/judges-corner/bankruptcy-judges/bankruptcy-fee-compendium.

consider other sources of authority. *See Boles v. Collins* (*In re Collins*), No. 17-10049 (MEW), 2017 WL 979021, *2 (Bankr. S.D.N.Y. Mar. 10, 2017).

One such source is 28 U.S.C. § 1915, which has been applied by bankruptcy courts within and without the Sixth Circuit. *See, e.g., id.* (applying § 1915(a) to an application for *in forma pauperis* status in connection with adversary proceeding filing fee); *In re Grodsky*, No. CV 19-14801, 2020 WL 1234430, at *4 (E.D. La. Mar. 13, 2020) (agreeing with other courts concluding that district courts and bankruptcy courts have authority to waive the filing fee for creditors who commence adversary proceedings in a bankruptcy case); *In re Byers*, 520 B.R. 246, 249–50 (Bankr. S.D. Ohio 2014) (applying § 1915(a) to an application for *in forma pauperis* status in connection with an appeal in an adversary proceeding); *In re Smith*, 499 B.R. 555, 556 (Bankr. E.D. Mich. 2013) (applying § 1915(a) to an application for *in forma pauperis* status in connection with an appeal in an adversary proceeding but noting split of authority as to bankruptcy court's authority under § 1915(a)).

Section 1915(a)(1) allows "any court of the United States [to] authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor." 28 U.S.C. § 1915(a)(1). Although "any court of the United States" does not by definition include bankruptcy courts,[2] some statutes applicable to "any court of the United States" have been applied equally to bankruptcy courts, because bankruptcy

---

[2] For purposes of title 28, "court of the United States" is defined to include "the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior." 28 U.S.C. § 451.

courts are units of district courts that hear bankruptcy cases on referral from district courts. *Collins*, 2017 WL 979021 at *2-3. For example, the Sixth Circuit has a history of upholding bankruptcy court sanctions under 28 U.S.C. § 1927, which also refers to "court[s] of the United States" when granting sanctioning authority. *In re Blasingame*, 709 F. App'x 363, 370 n7 (6th Cir. 2018) (noting and following the Sixth Circuit's practice in a series of unpublished opinions finding that bankruptcy courts may issue sanctions under 28 U.S.C. § 1927). The Court sees no reason why the Sixth Circuit would view extending authority to bankruptcy courts under 28 U.S.C. § 1915 any differently than for 28 U.S.C. § 1927.

"Section 1915 is intended to ensure that indigent persons have equal access to the judicial system by allowing them to proceed without having to advance the fees and costs associated with litigation." *Franklin v. Johnson Control/Adient*, No. 3:19-CV-01174, 2020 WL 996913, at *1 (M.D. Tenn. Mar. 2, 2020) (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948)). Although § 1915 refers in some sections to prisoners, the ability to proceed *in forma pauperis* as provided in § 1915(a)(1) and the screening procedure established by § 1915(e)(2) also apply to non-prisoner litigants. *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

A person seeking to proceed *in forma pauperis* is required to submit an affidavit stating all assets and showing that the person is unable to pay the litigation fees. 28 U.S.C. § 1915(a)(1). There is no minimum financial threshold to meet, but

instead the decision of whether to permit a person to proceed with suit *in forma pauperis* is within the Court's discretion. *Flippin v. Coburn*, 107 F. App'x 520, 521 (6th Cir. 2004) (citing *Phipps v. King*, 866 F.2d 824, 825 (6th Cir. 1988)). The issue for the court to determine is whether the fee can be paid without undue hardship. *Foster v. Cuyahoga Dep't of Health and Human Servs.*, 21 F. App'x 239, 240 (6th Cir. 2001).

Ms. Colebrook declares under penalty of perjury in her application that she is 67 years old, and she has $75.83 in her checking account and no other assets of value. She swears that her income and other financial benefits total $860 per month and she has expenses of $835 per month, leaving a net balance of $25 per month. The $350 filing fee is nearly half of Ms. Colebrook's monthly income. If she actually has $25 left over every month after payment of living expenses, it would take her fourteen months to save the funds necessary for the filing fee.

The Court finds that Ms. Colebrook is indigent and cannot pay the $350 adversary proceeding filing without undue hardship. The Court will allow her Complaint to be filed *in forma pauperis*, without prepayment of the fee.

Unfortunately for Ms. Colebrook, being allowed to file her Complaint does not automatically mean that she may proceed with pursuing her claims against Mr. Huffman and others in this litigation.

## II.     Screening of the Complaint

Because Ms. Colebrook filed her complaint *in forma pauperis*, the same statute that allows her to do so mandates that the Court review the complaint and dismiss it

if the Court determines that it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) ("the court *shall* dismiss the case at any time if the court determines that [the action] fails to state a claim on which relief may be granted") (emphasis added). The word "shall" in that subsection of the statute is crucial. This is not a discretionary role for the Court. While it can sometimes be uncomfortable for a court to apply this level of scrutiny to a *pro se* indigent plaintiff's complaint at the early stages of a lawsuit without any prompting by a defendant, that is precisely what the statute requires.

Even though the pre-screening requirement presents an initial hurdle that non-indigent filers do not face, it serves judicial efficiency and spares the plaintiff from pursing and defendant from defending a claim that cannot go the distance. *See Horan v. Fuqua*, No. 122CV01121JDBJAY, 2022 WL 4594561, at *1 (W.D. Tenn. Sept. 13, 2022) (explaining that a plaintiff cannot proceed *in forma pauperis* with a meritless complaint, as it would be an improper use of judicial resources and interfere with the orderly administration of justice, and as such it would be incompatible with the "privilege" of proceeding in forma pauperis).

## A. Standard of Review

The standard for dismissal for failure to state a claim under § 1915(e)(2)(B)(ii) is the same as applied to motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). To adequately state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court is required to "draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). However, it is not enough to allege facts that show a "mere possibility of misconduct" or "that are merely consistent with a defendant's liability." *Ashcroft*, 556 U.S. at 678–79 (internal quotation marks omitted).

Additionally, the court need not consider mere recitals of the elements or conclusory legal statements. *Id.* at 678. The plaintiff must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678). This pleading standard is construed liberally, *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) – all the more so because Ms. Colebrook is acting *pro se*.

"'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Notwithstanding the "less stringent standard," the *pro se* plaintiff is not relieved of basic pleading requirements. *Perry v. United Parcel Serv.*, 90 F. App'x 860, 861 (6th Cir. 2004). The complaint must still contain direct or inferential allegations respecting all the material elements to sustain a recovery under some viable cause of action. *Id.* "[T]he less stringent standard for pro se plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations." *Id.*

Because Ms. Colebrook has separately complained about Mr. Huffman's answer being late and asked the Court to strike it, the Court emphasizes for her benefit that it only considered her complaint in making its ruling.

## B. The Complaint

Ms. Colebrook's complaint is not broken down into specific counts or causes of action. The only statute Ms. Colebrook refers to is 11 U.S.C. § 523 and specific subsections of § 523.[3] She confuses the terms "objecting to discharge" and "requesting a declaration that debt is nondischargeable or not subject to discharge." Section 727 of the Bankruptcy Code applies to the former, and § 523 applies to the latter. Ms. Colebrook alleges that Mr. Huffman "is not eligible for discharge as debtor in his bankruptcy case pursuant to 11 U.S.C. 523 (a) (2) (a) (b) and 4 (6) and any other the court sees fit." (Complaint, Doc. 1, pp. 3-4.[4]) The Court interprets this to mean that Ms. Colebrook seeks the debt owed to her to be declared nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6).

Factually, Ms. Colebrook alleges that she invested $15,000 with John Forbes, Inc. dba SevenX Investments ("SevenX") "in consideration of acquiring the right to share in the profit for the sale of 231 Polk Dr. Franklin TN 37064" pursuant to a contract titled "Investor Financing Agreement" dated July 6, 2012, which is attached

---

[3] Ms. Colebrook also mistakenly references Fed. R. Bankr. P. 4004, which applies to actions under 11 U.S.C. § 727. The Rule applicable to actions under § 523 is Fed. R. Bankr. P. 4007.

[4] Because the exhibits to the complaint are attached to it and lack page numbers, for ease of reference to the exhibits, the Court will cite to the pages of Doc. 1 as numbered by CM/ECF in the document footer. The page numbers plaintiff included in the few pages of the complaint document will be disregarded.

to the complaint.[5] (*Id.*, p. 5, lines 2-8; Ex. A.) She alleges that she was promised a return of $30,000 upon sale of the property, but she does not say who made that promise or when it was made. It appears to have been incorporated into her contract with SevenX. The Investor Financing Agreement provides:

> 1) Repayment of Investment; Share of Profits: In consideration of the Investor making the above financial contribution, SevenX shall pay or cause to be paid to the Investor the amount of Thirty Thousand, $30,000.

(*Id.*, Ex. A, p. 10.)

Ms. Colebrook alleges she made a similar investment of $20,000 with SevenX related to the purchase of another property at 1563 Shining Ore Drive, Brentwood, TN 37027. She alleges she was promised a return of 50% of sale proceeds, but she again does not say who made that promise or when it was made. She signed a similar Investor Financing Agreement dated September 8, 2012, which includes the promise:

> 1) Repayment of Investment; Percentage Share of Profits: In consideration of the Investor making that financial contribution, SevenX shall pay or cause to be paid to the Investor the following:
>
> a) Net Profit Participation: Fifty Percent (50%) of net home sale proceeds. Net proceeds are computed as profit remaining after the deduction of estimated capital gains taxes incurred by SevenX. SevenX recognizes profit after deductions for all hard costs, capital gains and commission expenditures.

(*Id.*, Ex. A, p. 13.)

Other than attaching the two Investor Financing Agreements, Ms. Colebrook makes no reference to SevenX in her complaint, nor does she explain Mr. Huffman's

---

[5] Exhibits to the complaint are "a part of the pleading for all purposes." Fed. R. Bankr. P. 7010; Fed. R. Civ. P. 10(c).

connection with SevenX. Throughout her complaint, she refers to Mr. Huffman, Warren Forbes, and John Preston Thompson as "co-conspirators." At best, the Court can draw the inference that Mr. Huffman, Warren Forbes, and John Preston Thompson were affiliated with SevenX based on one of the attached email excerpts, described below, which was allegedly signed "Warren, Steve and Preston" followed by this block of text:

> JohnForbes, Inc. dba SevenX Investments
> Warren Forbes [phone number]
> Steve Huffman [phone number]
> John Preston Thompson [phone number]

(*Id.*, p. 18.)

In conclusory fashion, Ms. Colebrook alleges Mr. Huffman, with intent to defraud, misused the money she invested in the two properties. (*Id.*, p.7.) She alleges that Mr. Huffman "knowingly and willingly utilized intentionally false and deceptive tactics to induce Plaintiff to invest in their scheme and instead used the money for their own personal use or to further other fraudulent schemes." (*Id.*, p. 5.) She does not then describe the allegedly false and deceptive tactics.

The only allegedly false statement she identifies is that Mr. Huffman and his co-conspirators "intentionally [made] a false misrepresentation … of their ability to sell the properties in order to repay Plaintiff the agreed upon profit." (*Id.*) She does not include any allegations that the properties were not in fact purchased, not sold, not sold for a profit, or were sold for a profit and the profit was not shared with her per her contract.

Instead, the thrust of her complaint is that Mr. Huffman had the money to "fullfil[] his promise and guarantee to repay [her]," but instead he started other businesses, purchased luxury items and "liv[ed] high on the hog all while claiming he did not have the money to pay Plaintiff which is intentional fraud and deceit." (*Id.*)

Ms. Coleman alleges that at various points in time after her investment that Mr. Huffman promised that he or "his co-conspirators" (i.e., Mr. Forbes and Mr. Thompson) would repay her and would not file bankruptcy. She attaches what appear to be "cut and paste" excerpts of emails from July 6, 2012, to September 16, 2021, between herself and Mr. Huffman and other persons.[6] The Court will infer that Ms. Colebrook alleges the emails were sent on the dates stated and by the persons identified by name or email address.

The only communication from Mr. Huffman that predates her investments was sent July 6, 2012. In it, Mr. Huffman stated:

> We are very careful on any house that we take on to nullify the mortgage, so we don't expect for it not to work. I will tell you that we have never told a investor that if it don't work you will get your money back but in your case <u>if for what ever reason, something goes wrong on the investment I will honor you investment and put your money on another house.</u>

> I think we could have a good working relationship and you could help us bring in some deals or individuals such as Travis so I feel comfortable doing the guarantee with you.

---

[6] The Court infers that stevemitm@gmail.com is Mr. Huffman's email address. The emails are not otherwise shown to be with him.

(*Id.*, p. 17 (mistakes and emphasis original to complaint).) Notably, in this email Mr. Huffman did not guarantee repayment but said he would "put [Ms. Colebrook's] money on another house."

The subsequent emails dating from 2013 – 2021 in the years after her investment can be summarized as demands for payment by Ms. Colebrook and assurances of repayment by Mr. Huffman or Mr. Forbes.

### C. Analysis of Complaint for Stating a Claim on Which Relief May Be Granted Against Huffman

The Court will next examine whether Ms. Colebrook's allegations adequately state a claim: first for debt owed to her by Mr. Huffman (or others), and second for finding that debt nondischargeable under any of the referenced subsections of 11 U.S.C. § 523. Every dischargeability proceeding involves two separate inquiries. *In re Roland*, 294 B.R. 244, 249 (Bankr. S.D.N.Y. 2003). The Court must first determine whether the creditor holds an enforceable obligation under non-bankruptcy law. *Id.* If that's answered in the affirmative, the court next determines whether the debt is nondischargeable under § 523(a). *Id.* "In the absence of an enforceable obligation, there is no "debt" that can be non-dischargeable." *Id.*

### 1. Is There Enforceable Debt?

As a threshold matter, for debt to be excepted from discharge, there must be enforceable debt. Ms. Colebrook's 2012 contracts are with a corporate entity, not Mr. Huffman. She seeks to hold him personally liable based on fraud. Ms. Colebrook has not previously obtained a judgment against Mr. Huffman for fraud, but instead she would need this Court to enter one as part of its nondischargeabilty determination.

To the extent Ms. Colebrook's allegations adequately state a claim for fraud, which, as discussed below, the Court finds they do not, she is now time-barred from pursuing her claim. Generally, failure to meet the statute of limitations is considered an affirmative defense, but the court may dismiss a claim under Rule 12(b)(6) when "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir.2012).

When the complaint shows on its face that a claim would be time-barred without the benefit of the discovery rule, the plaintiff must specifically plead facts to show why the statute of limitations should be tolled. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) ("When it affirmatively appears from the face of the complaint that the time for bringing the claim has passed, the plaintiff cannot 'escape the statute by saying nothing.'") (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)). Based on the allegations in Ms. Colebrook's complaint, the Court finds that she has not pursued her claim within the applicable statute of limitation.

To determine the statute of limitation, the Court looks to state law and must determine which state's law to apply. A bankruptcy court applies the choice of law of the state with the most significant contacts. *Limor v. Weinstein & Sutton (In re SMEC, Inc.)*, 160 B.R. 86, 91 (M.D. Tenn. 1993). The two states whose law might apply are Tennessee and California. Tennessee is where the Debtor resides and the forum for the Debtor's bankruptcy case; it is the state's law the parties chose to apply to their contracts; and it is where the contracts were to be performed. California is

where the plaintiff resides and resided during all times relevant to the claims. The Court need not determine which of these two states has the most significant contacts, however, because under either state's law Ms. Colebrook's fraud claim has expired. *See In re Appalachian Fuels, LLC*, 493 B.R. 1, 18 (B.A.P. 6th Cir. 2013) (a choice of law analysis need only occur when there is "an actual conflict between the … law of the interested jurisdictions").

Both Tennessee and California have a 3-year statute of limitations for fraud claims. Tenn. Code Ann. § 28-3-105(1); Cal. Civ. Proc. Code § 338(d). Under Tennessee law, a cause of action for fraud or intentional misrepresentation accrues when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, her injury and its cause. *Ne. Knox Util. Dist. v. Stanfort Const. Co.*, 206 S.W.3d 454, 459 (Tenn. Ct. App. 2006). Similarly, a cause of action for fraud under California law accrues upon plaintiff's discovery of the facts constituting fraud. Cal. Civ. Proc. Code § 338.

Next the Court must consider whether the allegations of the complaint show that the fraud claim is time-barred. Ms. Colebrook is claiming fraud in relation to contracts she entered into approximately 12 years ago and under which she expected payment at least as of the fall of 2013, approximately 11 years ago, based on her emails with Mr. Huffman and others. She has not pleaded facts to show why the applicable three-year statute of limitation should be tolled, and the facts she has pleaded show that even if tolling were applied until she should reasonably have discovered fraud in 2013 – 2015, the statute has still expired.

Ms. Colebrook invested money with SevenX pursuant to contracts in 2012. The restated email communications attached to Ms. Colebrook's complaint show that as early as February 2013, Ms. Colebrook was seeking payment on her investment. Multiple demands by Ms. Colebrook and assurances of payment by Mr. Huffman or others followed from 2013 – 2021.

In November 2013, Ms. Colebrook wrote to Mr. Huffman:

I haven't had a payment since September, this is not acceptable, we had a guarantee that I would be paid back and you are not following through or communicating with me. This is a BIG PROBLEM to me. You have two months of payments to catch up on by the end of this month, please advise ASAP, I have been extremely patient but missing two month of payments is not acceptable.

If I do not hear from you by Thursday I will have to assume you have decided to renege on your contract and word.

(Compl. ECF 1, p. 21.)

In April 2014, Ms. Colebrook wrote to Mr. Huffman:

Still no payment. This is really getting beyond a joke all I get is false promises of payments. You need to just tell him straight that you have no intention of ever paying me back for the life savings I trusted and invested with you because of the guarantee. It is clear to me that you have no intention of paying me as I have given you every opportunity of paying a small regular amount each month so until it is paid but you fail to do that and just promise a payment will be made and it never is.

(*Id.* p. 22.)

In August 2015, Ms. Colebrook wrote:

IT is very frustrating to have put my trust in you and have the "guarantee of payment with interest" and to have to constantly keep asking for payments promised yet be given crumbs. I am sure you would feel the same way if I had done this to you. The only reason I did the investment was because of the guarantee of full payment and this is not happening."

(*Id.* p. 23.)

Ms. Colebrook voiced her suspicions that Mr. Huffman and the other persons with SevenX had no intention of paying her back and honoring their contract and that their alleged "guarantee" was potentially false and fraudulent as early as 2013, or, under a more conservative reading, 2015.

The complaint shows that by August 2015 at the latest, Ms. Colebrook was aware of her injury due to potential fraud. Under Tenneseee or California law, the statute of limitations for any fraud claim expired August 2018 at the latest. Ms. Colebrook did not pursue her fraud claim until this nondischargeabilty adversary proceeding, which she filed in February 2024. Any claim for fraud against Mr. Huffman is now time-barred. Therefore, Ms. Colebrook does not have an enforceable obligation and there is no debt to be declared nondischargeable. Since her fraud claim is time-barred, she cannot state a claim for relief. Therefore, her complaint will be dismissed.

## 2. Is the Debt Nondischargeable?

Notwithstanding the Court's determination that Ms. Colebrook's underlying debt cannot be enforced, in the interest of being thorough, the Court will also examine her complaint for stating a claim of nondischargeability under 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6). This examination reflects that the necessary allegations have not been made even if there were no problem with enforcement of the debt due to the statute of limitations.

### a. 523(a)(2)(A)

Under § 523(a)(2)(A), debt may be declared nondischargeable if it is "for money … to the extent obtained by … false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." For a debt to be nondischargeable under § 523(a)(2)(A)'s "false representation," a creditor must prove:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*In re Rembert*, 141 F.3d 277, 280–81 (6th Cir. 1998). The first prong of the *Rembert* test has three basic elements that must be satisfied: (1) the debtor received money; (2) that was procured through material misrepresentations by the debtor to the creditor; and (3) at the time the debtor made the representations, he either knew that they were erroneous, or he was reckless in failing to determine their veracity. *In re Morse*, 550 B.R. 338, 352 (Bankr. E.D. Tenn. 2016). A material misrepresentation is defined as "an expressed misrepresentation." *Wings & Rings, Inc. v. Hoover (In re Hoover)*, 232 B.R. 695, 700 (Bankr. S.D. Ohio 1999) (citing *Hile v. Lewis (In re Lewis)*, 164 B.R. 588, 591 (Bankr. N.D. Ohio 1994)).

Alternatively, a plaintiff may show actual fraud, which is not limited to misrepresentations. *In re Vitanovich*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001). Actual fraud is when "a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right." *Id.*

The only misrepresentation that Ms. Colebrook alleged is that Mr. Huffman and "his coconspirators" misrepresented their "ability to sell the properties in order to repay [her] the agreed upon profit." She does not specify how they allegedly puffed up their abilities. At no point does she say she relied on a misrepresentation as to Mr. Huffman's or others' ability to sell the properties when investing. Nor does she include any allegations to suggest that an inability to sell the property was the cause of her damages. Ms. Colebrook does not allege facts sufficient to state a claim that her debt was obtained through fraudulent representation.

The crux of her complaint is that, in the years that followed her investment, Mr. Huffman falsely promised to repay her, but instead lived extravagantly. These allegations that Mr. Huffman lived extravagantly rather than paying his debt to her do not state a claim that Mr. Huffman obtained her money through fraud – a scheme to deprive or cheat another of property or a legal right. Ms. Colebrook could not have relied on these after-the-fact promises in making her investment, and a refusal to pay debt already incurred is not fraud within the meaning of applicable law.

Even Ms. Colebrook's post-investment email complaints to Mr. Huffman and others that she believed they had no intent to fulfill their alleged guarantee of repayment do not include an allegation that Mr. Huffman made a false guarantee of repayment to induce Ms. Colebrook to invest or that he had no intention of repaying Ms. Colebrook at the time the promise was made. *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990) (when a claim is based on promissory fraud, the misrepresentation must "embody a promise of future action without the present

intention to carry out the promise") (citation omitted). Ms. Colebrook does not allege facts to support a claim that Mr. Huffman intentionally engaged in a scheme to deprive or cheat her of her money, as would be necessary for actual fraud under § 523(a)(2)(A). *Vitanovich*, 259 B.R. at 877.

If Ms. Colebrook were not time-barred from asserting a fraud claim against Mr. Huffman, her complaint still does not state a claim that debt was obtained by fraud and nondischargeable under § 523(a)(2)(A).

### b. 523(a)(2)(B)

Under § 523(a)(2)(B), debt may be declared nondischargeable if it is "for money … to the extent obtained by … use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition," in addition to other requirements of reasonable reliance and intent to deceive. This claim fails because the complaint lacks any allegation that Mr. Huffman provided Ms. Colebrook with a false financial statement to induce her to invest. Ms. Colebrook merely quotes language from the statute: "Use of a statement in writing that was materially false." (Compl. ECF 1, p. 6, line 20.) Mere recitals of elements do not state a claim. *Ashcroft*, 556 U.S. at 678–79.

### c. 523(a)(4)

Under § 523(a)(4), a debt may be declared nondischargeable if it is "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The complaint cites generally to this Code section but does not specify what action is

alleged to apply and does not expressly refer to a fiduciary relationship, embezzlement, or larceny.

As already discussed, the complaint fails to state a claim for fraud. As for "defalcation while acting in a fiduciary capacity," the Sixth Circuit has held that this section requires "an express or technical trust relationship," and that "the debtor must hold funds in trust for a third party." *In re Garver*, 116 F.3d 176, 179 (6th Cir. 1997). "Defalcation then occurs through the misappropriation or failure to properly account for those trust funds." *Id.* at 180. To state a claim, the plaintiff must allege facts in support of the following elements: 1) "that there was a fiduciary relationship" between plaintiff and defendant; 2) "that this relationship created an express or technical trust that placed a specific res in the hands of [defendant]"; and 3) that the defendant "then misappropriated or failed to account for those trust funds." *In Re Penick*, 149 F.3d 1184, 1998 WL 344039 at *4 (6th Cir. 1998). The complaint includes no allegations to support that there existed a fiduciary relationship between herself and Mr. Huffman or that he held her funds in trust. Ms. Colebrook invested funds with a company Mr. Huffman worked with, SevenX, pursuant to a contract.

"A creditor proves embezzlement under § 523(a)(4) 'by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud.'" *In re Piercy*, 21 F.4th 909, 919 (6th Cir. 2021) (quoting *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1173 (6th Cir. 1996)). Ms. Colebrook complains that she invested money with SevenX for the purchase of two parcels of real property with the goal of

SevenX selling the properties for a profit and sharing some of the profit with her. She alleges that her investment with SevenX was not returned with profit, that Mr. Huffman made promises after she had invested to pay her back, and that Mr. Huffman lived extravagantly. She has not alleged that Mr. Huffman or his co-conspirators did not in fact purchase the properties in which she intended to invest. Therefore, she fails to state a claim for embezzlement.

In contrast to embezzlement, when funds are voluntarily entrusted to the defendant, larceny involves a situation where the original taking is unlawful. *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 166 (Bankr. N.D. Ohio 2003). Larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Id*. Ms. Colebrook alleges that she intentionally invested – though perhaps allegedly induced to do so by fraud – funds with SevenX, not that Mr. Huffman stole money from her. She fails to state a claim for larceny.

For these reasons, the Complaint fails to state a claim for relief under § 523(a)(4).

### d. 523(a)(6)

Under § 523(a)(6), a debt may be declared nondischargeable if it is "for willful and malicious injury by the debtor to another entity . . . ." To satisfy this section, the injury must be shown to be both willful *and* malicious, as separate elements. *In re Berge*, 953 F.3d 907, 914 (6th Cir. 2020). "Willful" actions refer to "acts done with the actual intent to cause injury," and not to "acts, done intentionally, that cause injury."

*Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Intent is measured by a subjective standard: whether the debtor was motivated by a desire to inflict injury or knew that harm was a substantially certain consequence of his action. *Berge*, 953 F.3d at 915 (citations omitted). Intent may be inferred from the circumstances. *Id.* At no point does Ms. Colebrook allege that Mr. Huffman intended to cause her injury nor can intent to harm be inferred from the one alleged misrepresentation included in the Complaint about ability to sell the property. Even if intent could be inferred, malice cannot.

"'Malicious' means in conscious disregard of one's duties or without just cause or excuse ...." *Id.* (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)). "Just cause" is "[a] legally sufficient reason," and "excuse" is "[a] reason that justifies an act or omission or that relieves a person of a duty." *Id.* (quoting BLACK'S LAW DICTIONARY *916 (11th ed. 2019)). The complaint includes no allegation about Mr. Huffman's duties to SevenX, nor does it include facts to support that Mr. Huffman personally owed any duty toward Ms. Colebrook, or further, that he disregarded any such duty.

The Complaint fails to state a claim for relief under § 523(a)(6).

### 3. Conclusion as to Claims Against Mr. Huffman

For the reasons discussed above, the complaint against Mr. Huffman is dismissed.

## D. The Complaint Against Other Defendants

In addition to Mr. Huffman, Ms. Colebrook names as defendants John Preston Thompson, Warren Forbes, and "John Does 1 – 10." Although Ms. Colebrook may have claims against additional persons related to the investments alleged in her complaint, this complaint is for declaration of debt owed by Mr. Huffman to be nondischargeable under 11 U.S.C. § 523 and Mr. Huffman is the only proper defendant.[7] Ms. Colebrook's claims against these other defendants related to the dischargeability of any debt owed by Mr. Huffman to Ms. Colebrook are dismissed for failure to state a claim.

Ms. Colebrook also alleges generally that Mr. Thompson, Mr. Forbes, and John Does 1 – 10 are co-conspirators in an attempt to defraud her. Ms. Colebrook fails to state why this Court has jurisdiction over those claims or these additional defendants. For the Court to have jurisdiction over Ms. Colebrook's claims against these individuals, the claims must arise under title 11, or arise in or be related to Mr. Huffman's bankruptcy case. 28 U.S.C. § 1334(b). Ms. Colebrook is a creditor asserting state law fraud or conspiracy claims against non-debtor third parties. The only relationship to Mr. Huffman's bankruptcy case is that Ms. Colebrook alleges that these other individuals conspired with Mr. Huffman to defraud.

---

[7] The Court notes that Mr. Thompson has also filed bankruptcy in this District, and Ms. Colebrook has also filed a complaint against Mr. Thompson in his bankruptcy related to the dischargeability of his debt. The Court is addressing that complaint separately, and this order has no impact on that litigation.

To the extent a conspiracy claim sufficiently relates Ms. Colebrook's claims against these other individuals to her claims against Mr. Huffman such that the Court can exercise jurisdiction, the Court declines to do so and abstains pursuant to 28 U.S.C. § 1334(c)(1). The Court sees no compelling reason to expand what is essentially a claim that Mr. Huffman's debt to Ms. Colebrook is nondischargeable pursuant to bankruptcy law into a broader action under state law for fraud or conspiracy to defraud against multiple other defendants. This is especially true when such claims likely would be time-barred for the same reason as Ms. Colebrook's fraud claim against Mr. Huffman. Additionally, with the Court dismissing Ms. Colebrook's complaint against Mr. Huffman, her claims against the alleged co-conspirators can hardly be related to Mr. Huffman's bankruptcy case. The Court abstains from hearing any claims against any of these other defendants. To the extent Ms. Colebrook can state a claim against them, state court is the more appropriate forum.

Any claims that Ms. Colebrook has attempted to assert in this complaint against John Preston Thompson, Warren Forbes, and John Does 1 – 10 are therefore dismissed without prejudice.

### III.    Conclusion

For the reasons explained herein, the Court grants Ms. Colebrook's application to proceed *in forma pauperis* and accepts her complaint without prepayment of the adversary proceeding filing fee. However, because Ms. Colebrook waited long past the statute of limitation to assert fraud claims against Mr. Huffman, among other reasons, her complaint against Mr. Huffman is dismissed. Ms. Colebrook's complaint

against the other defendants is dismissed without prejudice due to the Court's lack of jurisdiction and/or abstention.  An appropriate order will be entered.

IT IS SO ORDERED.

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.